UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN ORT, INC.,

       Plaintiff,

 -v-

ORT ISRAEL,

       Defendant.

07 CV 2332 (KMK)

OPINION & ORDER

---

Appearances:

Kathleen Elizabeth McCarthy, Esq.
Joseph Colin Foley, Esq.
Morgan & Finnegan, LLP
New York, New York
*Counsel for Plaintiff*

Jacob Steven Wharton, Esq.
Michael E. Ray, Esq.
Womble Carlyle Sandridge & Rice, PLLC
Winston-Salem, North Carolina
*Counsel for Plaintiff*

Daniel Simon Ebenstein, Esq.
Chester Rothstein, Esq.
Holly Pekowsky, Esq.
Michael Joshua Kasdan, Esq.
Amster, Rothstein & Ebenstein LLC
New York, New York
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

  With this action, two formerly affiliated charitable organizations continue, in federal court, a trademark dispute that was initiated in January before the United States Patent and Trademark Office. Plaintiff, American ORT, Inc., brings this case under the Trademark Act of

1946 (the "Lanham Act"), 15 U.S.C. § 1051 *et seq.*, alleging that Defendant, ORT Israel, violated Plaintiff's registered trademark through Defendant's use of the word "ORT" in its American fundraising efforts.  On May 8, 2007, Plaintiff filed this Motion, which seeks to preliminarily enjoin Defendant from using the ORT mark to solicit charitable donations in the United States.  The Motion was fully briefed on June 13, 2007, and the Court heard oral argument on June 20, 2007.  Because there is no material disagreement as to the facts, the Court did not conduct a factual hearing.  For the following reasons, Plaintiff's Motion for a Preliminary Injunction is GRANTED.

### I.  Background

#### A.  The Founding of ORT and the ORT Community

The original ORT society was founded in Russia in 1880.  (Compl. ¶ 8; Answer ¶ 8.)  Its mission was to provide educational assistance and vocational training to impoverished Jewish people.  (Def.'s Mem. 2; Pl.'s Mem. 2.)  The word "ORT" is an acronym derived from a Russian phrase meaning "Society for Trades and Agricultural Labor."  (Def.'s Mem. 2; Pl.'s Mem. 2.)  ORT is also known by the English acronym "Organization for Rehabilitation through Training."  Today, organizations that use the term ORT exist around the world.  (Def.'s Mem. 2 (stating that there are "approximately twenty autonomous non-profit organizations" that use the word ORT in their name).)

World ORT, an umbrella organization, was founded in 1921.  (Pl.'s Mem. 3.)  Plaintiff was founded in the United States in 1922 under the name American ORT Society.  (Kessler Aff. ¶ 10; Compl. ¶ 9.)  Plaintiff is not the only non-profit organization operating in the United States that uses the word ORT in its name.  Both World ORT and Women's American ORT ("WAO"),

an organization founded in 1927 as an affiliate of American ORT, conduct fundraising activities in the United States. According to Plaintiff, World ORT's fundraising efforts "are generally limited to Jewish federations" and "are conducted in coordination with and [with] the approval of American ORT." (Nadler Aff. ¶ 1.) Plaintiff also claims that, "[f]rom the beginning, American ORT and Women's American ORT were connected," noting, for example, that one of the founders of WAO was the wife of one Plaintiff's founders. (*Id.*) WAO's 1969 incorporation papers identify WAO as a "member" of American ORT, and in an agreement executed that same year, Plaintiff gave WAO express permission to use the ORT name on the condition that WAO cease using that name if WAO ever disassociated itself from Plaintiff. (Kessler Aff. II ¶¶ 2, 5.) Defendant disputes this connection between Plaintiff and WAO, arguing that the two organizations are distinct, autonomous entities, each independently using the word "ORT" in its domestic literature and fundraising.[1]

Defendant was founded in Israel in 1949, where it is incorporated as a "public benefit organization." (Peleg Aff. ¶ 10.) Like the other ORT organizations in their respective countries, Defendant operates schools throughout Israel, specializing in "scientific and technological education." (Def.'s Mem. 3.) Defendant has the largest network of schools in the ORT community, with "more than 160 educational institutions" throughout Israel. (*Id.*) Plaintiff does not dispute that Defendant has a right to use the ORT mark in Israel.

---

[1] Defendant's support for this proposition is thin, consisting primarily of an affidavit from the Director General of ORT Israel, which states: "It is my understanding that neither American ORT or World ORT has ever exercised any control over the operations of any of the autonomous ORT organizations." (Peleg Aff. ¶ 27; *see also* Def.'s Mem. 4-5.)

3

### B.  The Dispute Between World ORT and ORT Israel

Until 2006, Plaintiff, Defendant, WAO, and numerous other "ORTs" located around the world were joint members of World ORT, which, according to its bylaws, is "a federation of autonomous National Organizations constituted in the form of an association." (Peleg Aff., Ex. 1.)  However, in September 2006, a dispute arose between Defendant and World ORT, and, as a result, Defendant suspended its active participation in World ORT.  (*Id.* ¶ 37.)  According to Defendant, the dispute occurred when World ORT "dramatically reduced" the funds that it allocated to Defendant, "with only 10 percent . . . of all the World ORT funds . . . being allocated to ORT Israel despite the fact that ORT Israel is the largest organization participating in World ORT and represents more than 70% of the activities touted by World ORT."  (*Id.* ¶ 38.)  Plaintiff does not dispute that World ORT reduced the funds that it allocated to Defendant, but Plaintiff claims that World ORT did so only after Defendant failed repeatedly to submit certain financial reports to World ORT.  (Pl.'s Mem. 5.)

In order to continue raising funds in the United States following its break with World ORT, Defendant "elected to work primarily with a new U.S. tax-exempt entity . . . , which w[ould] provide funds directly to ORT Israel from U.S. donors."  (Def.'s Mem. 7.)  At the time this Motion was filed, this entity "ha[d] been considering names such as Educate Israel, Inc. [or] TEC Israel" and planned to solicit donations from both individual and corporate donors, using the tag line "Global Support for ORT Israel."  (Peleg Aff. ¶¶ 51-52.)  Moreover, on at least one occasion, Defendant has already solicited funds in the United States using the ORT Israel name. (Nadler Aff., Exs. 1A-1G.)

C. Plaintiff's Registration of the ORT Trademark

On January 29, 2002, Plaintiff registered the "ORT" trademark with the United States Patent and Trademark Office ("USPTO"). (Kessler Aff. ¶ 8, Ex. 3.) Almost five years later, on January 26, 2007, Defendant petitioned the USPTO to cancel the registration "on the grounds that the mark was generic, merely descriptive without secondary meaning, and/or had been abandoned by American ORT." (Def.'s Mem. 8.) Plaintiff filed the Complaint in this action on March 21, 2007. Shortly thereafter, Plaintiff successfully moved the USPTO to stay the cancellation proceeding pending the resolution of this action. (Kasdan Aff., Exs. 33-34.)

## II. Discussion

A. Standard of Review

### 1. Preliminary Injunction Standard

"To obtain a preliminary injunction, plaintiff must show irreparable harm absent injunctive relief, and either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 113-14 (2d Cir. 2006). "In trademark disputes, a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm." *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) (quotations omitted); *accord Ptak Bros. Jewelry v. Ptak*, No. 06 Civ. 13732, 2007 WL 1536934, at *5 (S.D.N.Y. May 29, 2007).

2. Trademark Infringement

A trademark infringement claim is analyzed under a two-prong test: "First, [courts] look to see whether plaintiff's mark merits protection, and second, whether defendant's use of a similar mark is likely to cause customer confusion."[2] *Dooney & Bourke, Inc.*, 454 F.3d at 115; *see also Greenpoint Fin. Corp. v. Sperry & Hutchingson Co.*, 116 F. Supp. 2d 405, 409 (S.D.N.Y. 2000) ("To prevail on a claim for infringement under the Lanham Act, a plaintiff must show that (1) it has a distinctive mark subject to protection; and (2) the defendant's mark results in a likelihood of confusion."). "The first of these questions relates closely to the second, because a trademark's distinctiveness – the key consideration in assessing its protectability – is also a factor in determining the likelihood of confusion." *Playtex Prods., Inc. v. Georgia-Pac. Corp.*, 390 F.3d 158, 161 (2d Cir. 2004).

B. Plaintiff's Mark is Distinctive and Subject to Protection

When determining whether a disputed mark is subject to protection under the Lanham Act, courts in the Second Circuit begin by categorizing the mark. The Second Circuit recognizes four such categories of marks, each subject to a different level of protection:

---

[2] A defendant in a trademark infringement action may also prevail by establishing certain enumerated defenses, including the defense of "fair use." *See* 15 U.S.C. § 1115(b) (listing defenses under the Lanham Act). Under the fair use defense, where "a mark incorporates a term that is the only reasonably available means of describing a characteristic of another's goods, the other's use of that term in a descriptive sense is usually protected by the fair use doctrine." *EMI Catalogue P'ship v. Hill, Holliday, Conners, Cosmopulos Inc.*, 228 F.3d 56, 65 (2d Cir. 2000). Here, although Defendant notes that it "would be impossible in view of its history" for Defendant to identify its product without using the ORT brand (Def.'s Mem. 7), Defendant does not raise the defense of fair use. Therefore, because that issue has not been presented, the Court does not address what use of the ORT mark, if any, might constitute fair use given Defendant's historical relationship to Plaintiff's mark.

> (1) generic terms, which refer to the genus or class of which the product is a species, and are not entitled to protection even with proof of secondary meaning, i.e., proof that the public has come to associate the term with a particular source; (2) descriptive terms, which convey an immediate idea of some characteristic or attribute of the product and are entitled to protection with proof of secondary meaning; (3) suggestive terms, which require some imagination on the part of the consumer to ascertain the nature of the product, and are thus distinctive enough to be entitled to protection even without proof of secondary meaning; and (4) arbitrary or fanciful terms, which are so distinctive and indicative of a product's source, rather than its qualities or attributes, that they, unlike suggestive terms, enjoy trademark protection without the need of debating whether they are "merely descriptive."

*Papercutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 561-62 (2d Cir. 1990). Here, Plaintiff argues that the term ORT is suggestive, arbitrary, or fanciful. (*See* Pl.'s Reply Mem. 4-5.) Defendant, of course, disagrees and contends that ORT cannot be a valid trademark because the term is generic or descriptive, without secondary meaning. (Def.'s Mem. 9-13.)

"A generic mark is one that refers to the genus of which the particular product is a species. However, a mark is not generic when the primary significance of the term in the minds of the consuming public is not the product but the producer." *Pilates, Inc. v. Current Concepts, Inc.*, 120 F. Supp. 2d 286, 296 (S.D.N.Y. 2000) (citations and quotations omitted). Descriptive terms, in contrast, "are those that describe a thing, or 'how it is,' rather than name that thing, or 'what it is.'" *Horizon Mills Corp. v. QVC, Inc.*, 161 F. Supp. 2d 208, 212 (S.D.N.Y. 2001). This distinction is more "one of degree" than of kind, *id.*, and courts have recognized the difficulties involved in delineating these definitions. *See Papercutter, Inc.*, 900 F.2d at 562 (noting that the categories of trademark terms are "difficult of definition"). Terms that designate a "particular region, cultural movement, or legend" have been found to be generic, *Otokoyama Co. v. Wine of*

*Japan Imp., Inc.*, 175 F.3d 266, 271 (2d Cir. 1999), and a term found to be generic will not be protected by the Lanham Act even though it is in a language other than English. *Id.* at 271.

In determining whether a term is generic or descriptive, courts assess the term's "'primary significance' to the buying public." *Horizon Mills Corp.*, 161 F. Supp. 2d at 212; *see also Pilates*, 120 F. Supp. 2d at 296 (stating that the genericness inquiry turns on the "primary significance of the term in the minds of the consuming public"). In the Second Circuit, courts making this assessment look to several factors, including: "(i) proof of widespread use by competitors that has not been contested by the seller; (ii) generic use by the seller himself; (iii) dictionary definitions; (iv) media usage, such as newspaper or magazine articles; and (v) consumer surveys." *Horizon Mills*, 161 F. Supp. 2d at 214; *accord Pilates*, 120 F. Supp. 2d at 297.

Notably, in making this assessment, marks that have been registered with the USPTO are afforded a presumption of validity. *See Lemme v. NBC, Inc.*, 472 F. Supp. 2d 433, 442 (E.D.N.Y. 2007) ("[T]he fact that the USPTO accepted Plaintiff's mark for registration creates a presumption that the mark is valid."). Moreover, if the USPTO accepts a mark for registration without requiring "proof of secondary meaning," courts recognize a "presumption that the mark is more than merely descriptive, and, thus, that the mark is inherently distinctive." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999). This "confers a procedural advantage on the registrant in an infringement action: the opposing party must overcome the presumption that the purchasing public perceives the mark to be inherently distinctive." *Id.*; *see also Lemme*, 472 F. Supp. 2d at 443 ("The burden . . . therefore shifts to Defendant to proffer evidence that the mark is not valid, i.e., that it is generic or descriptive with

8

no secondary meaning."). Accordingly, a defendant seeking to invalidate a registered trademark bears the burden of establishing, by a preponderance of the evidence, that the mark is either generic or descriptive.[3] *See Papercutter, Inc.*, 900 F.2d at 563 ("[A] defendant may petition for cancellation of the plaintiff's registration . . . by rebutting the presumption of a plaintiff's right to exclusive use of a registered mark by a preponderance of the evidence.").

Here, Defendant has failed to meet this burden. First, Defendant has offered insufficient "proof of widespread use [of the mark] by competitors that has not been contested by the seller . . . ." *Horizon Mills Corp.*, 161 F. Supp. 2d at 214. Although, as Defendant points out, other organizations, including WAO and World ORT, have operated and raised funds in the United States under the ORT name, on the evidence before the Court, those organizations did so only in collaboration with Plaintiff, not as Plaintiff's "competitors." (*See* Kessler Aff. II ¶¶ 5, 9.) Indeed, when entities unaffiliated with Plaintiff have used the ORT name, Plaintiff has acted quickly and successfully to prevent such use. (*See id.*, ¶ 10, Exs. 10-11.)

Second, Defendant has not come forward with evidence that Plaintiff itself uses the term ORT generically or descriptively. *See Horizon Mills Corp.*, 161 F. Supp. 2d at 214 (listing "generic use by the seller himself" as a factor in determining whether a mark is generic). On the contrary, on its website and in its pleadings, Plaintiff uses the term ORT as a proper name to

---

[3]In an attempt to avoid this burden, Defendant argues that Plaintiff was able to register its mark only by misleading the USPTO and that, therefore, the Court should not apply the usual presumption of distinctiveness. However, Defendant has not pleaded "fraud on the USPTO," *cf.*, *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, No. 04 Civ. 5316, 2006 WL 2807213, at *4-*5 (S.D.N.Y. Sept. 28, 2006) (listing elements of "fraud on the [US]PTO"), and, indeed, has admitted that "we don't have a basis yet to call it fraud." (Hr'g Tr. 56, June 20, 2007.) Accordingly, the Court will apply the presumption of distinctiveness, although Defendant will be permitted to attempt to rebut the presumption by reference to any facts that were allegedly misrepresented.

identify either the original ORT organization in Russia, the ORT branches with which Plaintiff is currently affiliated, or the work of those affiliated entities. For example, Plaintiff states that: "ORT was originally established in 1880" (Kasdan Aff., Ex. 3); "ORT is one of the largest global hi-tech education organizations in the world" (*id.*); and "ORT schools . . . are helping many students who are coping with trauma . . . ." (*Id.*, Ex. 17.) Simply put, Plaintiff uses the term ORT as a mark, not generically or descriptively. And while Plaintiff acknowledges that the ORT name arises from a Russian acronym (Compl. ¶ 8; Kasdan Aff., Ex. 3), nowhere in the record does Plaintiff use the term ORT in reference to a cultural "movement" or an independent "heritage or mission," as Defendant would view the term. (*See* Def.'s Mem. 2, 11.) Indeed, in its application for funds from the United Jewish Federation, Defendant itself never once uses the term ORT generically or descriptively, instead repeatedly using the term as a proper name. (*See* Nadler Aff., Exs. 1A-1B ("The program is a natural outgrowth of ORT's strategic investment . . . ."; "As in all ORT projects, we will use an external evaluator . . . .").)

Third, Defendant has failed to demonstrate that the term ORT is used generically or descriptively in the media, "such as [in] newspaper or magazine articles." *Horizon Mills Corp.*, 161 F. Supp. 2d at 214. The few articles that are part of the record use the term ORT primarily, if not exclusively, as a proper name to identify either World ORT or the various affiliated "ORT chapters operating in 56 countries" (Kasdan Aff., Ex. 16, 44-45), not to denote a cultural movement. *Cf. Pilates*, 120 F. Supp. 2d at 300-02 (finding genericness where defendant submitted 775 articles, a book, and several videotapes of news broadcasts, all of which primarily used the term "Pilates" generically). Finally, Defendant has not submitted a consumer survey that might establish that the term ORT is generic. *See Horizon Mills Corp.*, 161 F. Supp. 2d at

10

214 (noting that courts consider consumer surveys as a factor in determining a mark's genericness); *cf. Pilates*, 120 F. Supp. 2d at 302-04 (finding genericness where defendant submitted a survey of 273 people in which "everyone surveyed described Pilates as a type of exercise," not as a brand).

Defendant does, however, submit definitions taken from two acronym dictionaries. (Kasdan Aff., Exs. 1-2.) "Though not conclusive, dictionary definitions of a word to denote a category of products are significant evidence of genericness because they usually reflect the public's perception of a word's meaning and its contemporary usage." *Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 810 (2d Cir. 1999). But reliance on an acronym dictionary, unlike reliance on a traditional dictionary, gets Defendant only halfway there. For even if Defendant establishes that the term ORT stands for an independent Russian or English phrase, the question remains whether, in the public's perception, that phrase represents a generic "category of products" or simply the name of an organization. Here, to the extent that the dictionaries at issue resolve that second question at all, the resolution favors Plaintiff, as the only dictionary that addresses the meaning of the phrase states simply that ORT is an "acronym . . . used in the names of several Jewish social welfare organizations." (Kasdan Aff., Ex. 1.) Accordingly, the fact alone that Plaintiff's mark is found in an acronym dictionary is insufficient to meet Defendant's burden of establishing that Plaintiff's registered mark is generic or descriptive. Moreover, in light of the term's distinctive use by the media, by Plaintiff, and, indeed, by Defendant itself, the evidence supports a finding that the consumer public views the term ORT as distinctive, not as generic or descriptive. Accordingly, because at this point in the proceedings Defendant has failed to produce sufficient evidence to overcome the presumption that the relevant consumer

public views Plaintiff's mark as distinctive, the Court finds that, for the purposes of this Motion, Plaintiff holds a valid, protectable mark.[4]

### C.  Defendant's Use of the ORT Mark is Likely to Cause Customer Confusion

Because the Court finds that Plaintiff has a valid mark, it must next assess whether Defendant's use of the mark creates a likelihood of confusion.  "In analyzing this second prong of the test for trademark infringement, courts apply the non-exclusive multi-factor test developed by Judge Friendly in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)."  *Dooney & Bourke, Inc.*, 454 F.3d at 116.  Under this test, a court must consider:  "(1) the strength of the mark, (2) the similarity of the two marks, (3) the proximity of the products, (4) actual confusion, (5) the likelihood of plaintiff's bridging the gap [i.e., entering a market related to that in which the defendant sells its product], (6) defendant's good faith in adopting its mark, (7) the quality of defendant's products, and (8) the sophistication of the consumers."  *Id.*  Based on the evidence currently before the Court, these factors strongly favor a finding of infringement.

---

[4]Because the Court makes this finding, Defendant's reliance on *First Church of Christ, Scientist v. Evans*, 520 A.2d 1347 (N.J. 1987), is inapposite.  In *Evans*, the New Jersey Supreme Court held that an individual Christian Science church that had previously been affiliated with the national Christian Science "Mother Church" could still use the Christian Science name despite having broken ties with the national organization.  Unlike the instant case, however, the *Evans* court based its decision on its finding that the term "Christian Science" was generic and therefore was unprotected under the Lanham Act.  *Id.* at 1354 ("[W]e have concluded that 'Christian Science Church' is generic . . . .").  Because Defendant has failed to rebut the presumption that the term ORT is distinctive, this case is distinguishable from *Evans*.

1. The *Polaroid* Factors

a. Strength of the Mark

"The strength of a mark refers to its ability to identify the source of the goods being sold under its aegis. There are two components of a mark's strength: its inherent distinctiveness and the distinctiveness it has acquired in the marketplace." *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 130-31 (2d Cir. 2004) (citations omitted). Under this rubric, Plaintiff's mark is strong. With respect to the first component, as discussed above, the Court finds that the term ORT is inherently distinctive. With respect to the second, the evidence before the Court suggests that, in the relevant marketplace, Plaintiff's mark specifically identifies Plaintiff as the source of its services. Plaintiff has used the ORT mark in the United States for over eighty years and has registered the mark with the USPTO. Since 1922, Plaintiff and its affiliates "have used the ORT trademark in hundreds, if not thousands of campaigns to raise funds in the United States," and in the process have built strong relationships with donor families and institutions. (Kessler Aff. ¶¶ 10, 13.) Moreover, Plaintiff has policed its mark, and where others have used it, they have done so with Plaintiff's permission and cooperation.[5] Taken together, this evidence indicates that, in the United States, Plaintiff's mark is strongly "origin-indicating." *Savin Corp. v. Savin Group*, 391 F.3d 439, 457 (2d Cir. 2004).

---

[5] Defendant contests this, claiming that Defendant itself has "participated in fundraising activities in the United States." (Def.'s Mem. 14.) However, when pressed at oral argument, Defendant conceded that it has engaged in domestic fundraising only indirectly, through Plaintiff or its affiliates. (Hr'g Tr. 42.)

### b.  Similarity of the Marks

On their face, Plaintiff's and Defendant's marks are clearly similar.  Both marks prominently feature the term ORT, and Defendant's mark differs from Plaintiff's mark only by virtue of the geographical descriptor "Israel," which in some instances is written in Hebrew.  (*See* Nadler Aff., Ex. 1B.)  Defendant argues that this geographical descriptor is sufficient to distinguish the two marks.  (Def.'s Mem. 15.)  But Defendant cites to no authority to support this position, and, indeed, the caselaw supports the opposite view.  *See U.S. Jaycees v. Phila. Jaycees*, 639 F.2d 134, 142 (3d Cir. 1981) ("[It] does not alleviate the confusion when commonly the trademarked name is preceded by a geographical identification.").  Accordingly, the Court finds that this factor favors Plaintiff.

### c.  Proximity of the Products and Bridging the Gap

"The proximity inquiry asks to what extent the two products compete with each other." *Brennan's, Inc.*, 360 F.3d at 134.  Here, it cannot be reasonably disputed that Plaintiff and Defendant closely compete.  Defendant has targeted many of the same donors as has Plaintiff (*see* Kessler Aff. ¶¶ 29, 33, 35, 37), and the two charitable organizations perform similar educational and vocational services for the benefit of the same general community.  This factor therefore strongly favors Plaintiff.  The related bridging the gap factor, which asks whether the purported trademark holder is likely to develop a product for sale in the alleged infringer's market, is irrelevant where, as here, the two companies already compete in the same market. *See Star Indus. v. Bacardi & Co.*, 412 F.3d 373, 387 (2d Cir. 2005) ("Because . . . [the plaintiff's and defendant's] products are already in competitive proximity, there is really no gap to bridge . . . .").

### d. Actual Confusion

To prevail on a trademark infringement case under the Lanham Act, a plaintiff need not present evidence of actual confusion, only a likelihood of confusion. *See Savin Corp.*, 391 F.3d at 459 ("[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act . . . ." (quotations omitted and alteration in original)). However, the Second Circuit has held that such evidence strongly supports a finding of likelihood of confusion: "There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion." *Id.*; *see also Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 151 (2d Cir. 2003) ("It is self-evident that the existence of actual consumer confusion indicates a likelihood of consumer confusion. We have therefore deemed evidence of actual confusion particularly relevant to the inquiry." (quotations and citations omitted)). Here, Plaintiff has established that, in the short time since Defendant began soliciting donations in the United States, at least one of Plaintiff's donors has already been confused by Defendant's use of the ORT mark.[6] Accordingly, this important factor favors Plaintiff.

### e. Good Faith

"Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Star Indus.*, 412 F.3d at 388. While "[b]ad faith may be

---

[6]In this incident, a representative of the United Jewish Federation of Pittsburgh (the "UJF") was solicited for donations by both Defendant and one of Plaintiff's affiliates. (*See* Nadler Aff. ¶ 2.) Mistaking Defendant's funding proposal for that of Plaintiff's affiliate, the UJF contacted the affiliate and requested that it submit only one proposal. (*See id.*, Ex. 2.) While the UJF did not ultimately donate to Defendant, it cannot reasonably be disputed that the UJF was confused by Defendant's use of the ORT mark. Indeed, had Plaintiff's affiliate not contemporaneously solicited a donation, it is unlikely that the UJF would have realized its mistake.

inferred from the junior user's actual or constructive knowledge of the senior user's mark," *id.* at 389, such an inference would be inappropriate here. Although Defendant clearly knew of Plaintiff's use of the ORT mark in the United States, Defendant did not "adopt[] its mark with the intention of capitalizing on [the] plaintiff's reputation and goodwill." *Savin Corp.*, 391 F.3d at 460 (quotations omitted, second alteration in original). On the contrary, Defendant adopted its mark in Israel decades before it anticipated directly soliciting donations in the United States, and Plaintiff has presented no evidence that Defendant has sought to "sow confusion" between its mark with that of Plaintiff. Accordingly, the Court finds Defendant has not acted in bad faith in its use of the ORT mark.

### f.  Quality and Customer Sophistication

The quality and customer sophistication factors do not support either Party. The record is simply too sparse to determine either the relative quality of Plaintiff's and Defendant's products or the sophistication of the target donors, and the Court will not speculate as to the merits of these positions based on an insufficient record.[7]

### 2.  Balancing the Factors

Taking all of the *Polaroid* factors into account, the likelihood-of-confusion inquiry is not a close question. Four of the factors strongly favor Plaintiff, including the "particularly relevant" factor of actual confusion. *Virgin Enters.*, 335 F.3d at 151. Only one factor, good faith, favors

---

[7]Plaintiff alleges that Defendant's services are inferior because Defendant is insufficiently transparent, an allegation that Defendant disputes. (Pl.'s Mem. 19; Def.'s Mem. 20-21.) Defendant, for its part, submits several statements made by Plaintiff which attest to the high quality of Defendant's services. (Def.'s Mem. 20.) The dispute regarding Defendant's alleged lack of transparency is largely peripheral to these proceedings and, in any event, cannot be resolved on the record before the Court.

Defendant. More importantly, given the close similarity of the marks and the services offered, as well as the fact that Defendant's solicitations target the same potential donors as do Plaintiff's, the Court finds it likely that some donors will be confused by Defendant's use of the ORT mark. *See Playtex Prods., Inc.*, 390 F.3d at 162 ("When balancing the factors, district courts generally should not treat any single factor as dispositive . . . . Instead, the court should focus on the ultimate question of whether consumers are likely to be confused." (internal quotations and citations omitted)). Accordingly, the Court finds that Plaintiff has met its burden of establishing a likelihood of confusion.

### D.  Irreparable Harm

Finally, the Court concludes that Plaintiff has shown the irreparable harm necessary for injunctive relief. As noted, in the Second Circuit, a plaintiff "who establishes that an infringer's use of its trademark creates a likelihood of consumer confusion generally is entitled to a presumption of irreparable injury." *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005). Here, as discussed above, Plaintiff has established a likelihood of confusion. And because Defendant seeks donations from individuals and corporations who, like all potential donors, have only limited resources, the Court finds that, even absent the presumption, such confusion will cause Plaintiff irreparable harm. Moreover, Plaintiff has not unduly delayed in seeking injunctive relief nor done anything else to defeat the presumption of irreparable injury, having sought this relief within weeks of learning the full extent of Defendant's fundraising activities using the ORT mark in the United States. *See id.* at 144-45; *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995). Therefore, the Court finds that Plaintiff has established irreparable harm absent a preliminary injunction.

### III. Conclusion

For the foregoing reasons, the Court finds that Plaintiff has established both irreparable harm and a likelihood of success on the merits. Accordingly, it is hereby

ORDERED that Defendant ORT Israel and its officers, agents, employees, and attorneys, and those persons in active concert of participation with them who receive actual notice of this Order, are: (i) enjoined from using the ORT mark for fundraising in the United States; and (ii) enjoined from representing to any party that they are authorized to use the ORT mark for purposes of or in connection with fundraising in the United States. This preliminary injunction is effective immediately and shall remain in effect through trial or until modified by this Court. It is further

ORDERED that within one week of the filing of this Opinion, the Parties are to submit to the Court memoranda of law addressing the propriety and amount of a bond. These memoranda of law shall not exceed five pages.

SO ORDERED.

DATED:     New York, New York
           July 17, 2007

                                            _____
                                            KENNETH M. KARAS
                                            UNITED STATES DISTRICT JUDGE

18